IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | 3:25-CV-720 (          ) |
| and STATE OF CONNECTICUT, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| NAZNEEN JAFFRI, DDS | : | |
| | : | |
| Defendant | : | |

**COMPLAINT**

Plaintiffs United States of America ("United States") and the State of Connecticut ("Connecticut") bring this action against Nazneen Jaffri, DDS ("Jaffri") ("defendant") to recover monies that defendant wrongfully caused to be paid by the Medicaid program. For their causes of action, the United States and Connecticut allege as follows:

**NATURE OF ACTION**

1. The United States brings this action to recover statutory damages and civil penalties under the Federal False Claims Act, as amended, 31 U.S.C. §§ 3729-3733. Connecticut brings this action to recover statutory damages and civil penalties under the Connecticut False Claims Act, as amended, Conn. Gen. Stat. §§ 4-274 through 4-289. The United States and Connecticut bring this action to recover all available damages and other monetary relief under the common law or equitable theories of unjust enrichment and payment by mistake of fact. Connecticut also brings this action on behalf of the Connecticut Department of Social Services ("DSS") to recover all available damages and other monetary relief for breach of contract.

The United States and Connecticut allege that defendant submitted false or fraudulent

1

claims for payment to the Medicaid program for dental services allegedly rendered to patients who were referred to defendant by a patient recruiter, and for whom the defendant paid the recruiter $116 per-patient whenever a patient received services over and above routine preventative care (such as dental cleanings and exams), in violation of the anti-kickback statute, 42 U.S.C. § 1320a-7b(b) ("the AKS").

## JURISDICTION

2. This Court has subject matter jurisdiction to entertain this action under 28 U.S.C. §§ 1331 and 1345. The Court possesses supplemental jurisdiction to entertain the Connecticut state law, common law, and equitable causes of action pursuant to 28 U.S.C. § 1367(a) and 31 USC § 3732(b).

3. This Court has personal jurisdiction over defendant pursuant to 31 U.S.C. § 3732(a) because defendant transacted business in this District, and because defendant committed acts within this District that violated 31 U.S.C. § 3729.

## VENUE

4. Venue is proper in the District of Connecticut under 31 U.S.C. § 3732 and 28 U.S.C. § 1391(b) and (c) because defendant transacted business in this District, and because defendant committed acts within this District that violated 31 U.S.C. § 3729.

## PARTIES

5. The United Sates brings this action on behalf of the Department of Health and Human Services ("HHS") and its agency, the Centers for Medicare & Medicaid Services ("CMS").

6. William Tong, Attorney General of Connecticut, also brings this action in the name of Connecticut by virtue of his authority pursuant to Conn. Gen. Stat. § 3-125, and on behalf of DSS.

7. Jaffri was formerly licensed to practice dentistry in Connecticut and was formerly enrolled as a dental provider in the Connecticut Medical Assistance Program ("CMAP"). Jaffri is the former owner and operator of a dental practice in Norwalk, Connecticut.

**THE FEDERAL FALSE CLAIMS ACT AND THE ANTI-KICKBACK STATUTE**

8. The federal False Claims Act provides, in pertinent part that:

(a) Liability for Certain Acts. (1)…[A]ny person who—

(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

(B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

* * *

is liable to the United States Government . . . .

(b) For purposes of this section- (1) the terms "knowing" and "knowingly"- (A) mean that a person, with respect to information (i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information, and (B) require no proof of specific intent to defraud.

31 U.S.C. § 3729.

9. The AKS makes it illegal for individuals or entities to knowingly and willfully "offer[] or pay[] any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person to refer an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program." 42 U.S.C. §

1320a-7b(b)(2)(A).

10. The AKS arose out of congressional concern that remunerative inducements may corrupt patient and professional health care decision-making, impose higher costs on Federal health care programs, and divert federal funds towards goods and services that are medically unnecessary, of poor quality, or even harmful to a vulnerable patient population. To protect Federal health care programs from these harms, Congress enacted a prohibition against the payment of kickbacks in any form. First enacted in 1972, Congress strengthened the statute in 1977 and 1987 to ensure that kickbacks masquerading as legitimate transactions did not evade its reach. See Social Security Amendments of 1972, Pub. L. No. 92-603, §§ 242(b) and (c); 42 U.S.C. § 1320a-7b, Medicare-Medicaid Antifraud and Abuse Amendments, Pub. L. No. 95-142; Medicaid and Medicaid Patient Program Protection Act of 1987, Pub. L. No. 100-93.

11. In 2010, Congress amended the AKS to provide that "a claim that includes items or services resulting from a violation of this section constitutes a false or fraudulent claim for purposes of [the FCA]." 42 U.S.C. § 1320a-7b(g). Congress added this provision to confirm "that all claims resulting from illegal kickbacks are considered false claims for the purpose of civil actions under the [FCA] . . . ." 155 Cong. Rec. S10854 (Oct. 28, 2009).

12. The HHS Office of Inspector General ("HHS-OIG") has promulgated "safe harbor" regulations that identify payment practices not subject to AKS enforcement because such practices are unlikely to result in fraud or abuse. See 42 C.F.R. § 1001.952. Safe harbor protection is afforded only to those arrangements that meet all of the specific conditions set forth in the regulations. The defendant's conduct does not fall within any regulatory safe harbor.

## THE CONNECTICUT FALSE CLAIMS ACT

13. The Connecticut False Claims Act provides, in pertinent part that:

   (a) No person shall:

   (1) Knowingly present, or cause to be presented, a false or fraudulent claim for payment or approval;

   (2) Knowingly make, use or cause to be made or used, a false record or statement material to a false or fraudulent claim;

   (b) Any person who violates the provisions of subsection (a) of this section shall be liable to the state. . . . Conn. Gen. Stat. § 4-275.

   \* \* \*

As used in … section 4-275: (1) "knowing" and "knowingly" means that a person, with respect to information: (A) has actual knowledge of the information; (B) acts in deliberate ignorance of the truth or falsity of the information; or (C) acts in reckless disregard of the truth or falsity of the information, without regard to whether the person intends to defraud. Conn. Gen. Stat. § 4-274.

## THE MEDICAID PROGRAM

14. Medicaid is a joint federal-state program that provides health care benefits for certain persons, including the indigent and disabled. The federal Medicaid statutes set forth the minimum requirements for state Medicaid programs to qualify for federal funding. 42 U.S.C. § 1396a. The federal share of each state's Medicaid payments is based on the state's per capita income compared to the national average. 42 U.S.C. § 1396d(b). State Medicaid programs pay the balance, which is referred to as the "state share."

15. The DSS administers the CMAP, which includes the Connecticut Medicaid program. The DSS Commissioner is authorized to promulgate regulations as necessary to administer the CMAP. Regs., Conn. State Agencies § 17b-262-523 (13). The DSS reimburses participating providers for healthcare services provided to CMAP beneficiaries.

16. All healthcare providers enrolled in the CMAP must comply with applicable statutes (including the AKS), regulations and guidelines in order to be reimbursed by the CMAP. A provider has a legal duty to have knowledge of the statutes (including the AKS), regulations and guidelines regarding coverage for CMAP services. A provider of goods and services to CMAP recipients is obligated to adhere to the AKS and CMAP requirements in order to both participate in, and receive payment from, the CMAP through the DSS. Regs., Conn. State Agencies § 17b-262-522.

17. Every person, organization, and entity that wishes to voluntarily participate as a provider in the CMAP is required to enter into a CMAP Provider Enrollment Agreement ("Provider Agreement").

18. A CMAP provider agrees in the Provider Agreement "[t]o continually adhere to professional standards governing medical care and services and to continually meet state and federal licensure, accreditation, certification or other regulatory requirements, including all applicable provisions of the Connecticut General Statutes and any rule, regulation, or DSS policy promulgated pursuant thereto and certification in the Medicare program, if applicable." Provider Agreement, ¶ 3.

19. A CMAP provider "acknowledges and understands that the prohibitions set forth in state and federal law include, but are not limited to, the following: a. false statements, claims,

misrepresentation, concealment, failure to disclose and conversion of benefits; b. any giving or seeking of kickbacks, rebates, or similar renumeration;…." Provider Agreement, ¶ 27.

20. A CMAP provider further agrees to "abide by DSS' Medical Assistance Program Provider Manual(s), as amended from time to time, as well as all bulletins, policy transmittals, notices, and amendments . . . ." Provider Agreement, ¶ 10.

21. The CT Dental Health Partnership ("CTDHP") provider manual is an addendum to both the CMAP provider agreement and the CMAP provider manual.

22. The CTDHP provider manual expressly prohibits per-patient compensation for individuals referred and/or brought to CMAP providers.

23. A CMAP provider also agrees in the Provider Agreement to "submit only those claims for goods and services that are covered by the Connecticut Medical Assistance Program and documented by Provider as being . . . for compensation that Provider is legally entitled to receive. . . ." Provider Agreement, ¶ 15.

24. By executing the Provider Agreement, the CMAP provider, or the provider's authorized representative, acknowledges to "**HAVING READ THIS AGREEMENT AND UNDERSTANDING IT IN ITS ENTIRETY** . . . ." (Emphasis in original). Provider Agreement, page 7.

25. Jaffri and her former dental practice both executed Provider Agreements that enabled them to participate as providers in the CMAP.

## THE IMPROPER CONDUCT

26. Defendant acted with actual knowledge, deliberate ignorance or reckless disregard of the laws, regulations and guidance applicable to the Medicaid program when submitting claims for dental services.

7

27. Chapter 5 of the CTDHP provider manual concerning "Marketing Guidelines," states, "The provider must not compensate marketing staff whether they are employees, independent contractors or marketing representatives through the use of a per client/patient incentive or a similar bonus type of reimbursement" CTDHP provider manual, page 5-16.

28. Defendant submitted claims to Medicaid for dental services provided to patients referred to her dental practice by a patient recruiter to whom the defendant paid a $116 per-patient fee for the referral, in violation of the AKS.

29. These kickback-tainted claims for dental services constituted false or fraudulent claims submitted to the Medicaid program during the period January 1, 2019, through April 24, 2021.

30. Defendant's false or fraudulent claims damaged the United States and Connecticut because they allowed defendant to obtain monies to which defendant was not entitled.

31. As a result of defendant's actions, the United States and Connecticut paid for dental services allegedly provided to patients that the United States and Connecticut would not have paid for had they known defendant paid a per-patient incentive to a patient recruiter for the referral of those patients, in violation of the AKS.

## CLAIMS

### FIRST CAUSE OF ACTION
(False Claims Act: Presentment of False Claims)
(31 U.S.C. § 3729(a)(1)(A)(2010))

32. The United States re-alleges and incorporates by reference paragraphs 1 through 31 as though fully set forth herein.

33. Defendant knowingly presented or caused to be presented false or fraudulent claims for payment or approval.

8

34. By virtue of the false or fraudulent claims made by the defendant, the United States suffered damages and therefore is entitled to statutory damages under the False Claims Act, to be determined at trial, plus a civil penalty for each violation.

## SECOND CAUSE OF ACTION
(False Claims Act: Making or Using False Record or Statement)
(31 U.S.C. § 3729(a)(1)(B)(2010))

35. The United States re-alleges and incorporates by reference paragraphs 1 through 31 as though fully set forth herein.

36. Defendant knowingly made, used, or caused to be made or used, false records or false statements material to a false or fraudulent claim.

37. By virtue of the false records or false statements defendant made, the United States suffered damages and therefore is entitled to statutory damages under the False Claims Act, to be determined at trial, plus a civil penalty for each violation.

## THIRD CAUSE OF ACTION
(Connecticut False Claims Act: Presentation of False Claims)
(Conn. Gen. Stat. § 4-275(a)(1))

38. Connecticut re-alleges and incorporates by reference paragraphs 1 through 31 as though fully set forth herein.

39. Defendant knowingly presented or caused to be presented false or fraudulent claims for payment or approval.

40. By virtue of the false or fraudulent claims made by the defendant, Connecticut suffered damages and therefore is entitled to statutory damages under the Connecticut False Claims Act, to be determined at trial, plus a civil penalty for each violation.

## FOURTH CAUSE OF ACTION
(Connecticut False Claims Act: Making or Using False Record or Statement)
(Conn. Gen. Stat. § 4-275(a)(2))

41. Connecticut re-alleges and incorporates by reference paragraphs 1 through 31 as though fully set forth herein.

42. Defendant knowingly made, used, or caused to be made or used, false records or false statements material to a false or fraudulent claim.

43. By virtue of the false records or false statements defendant made, Connecticut suffered damages and therefore is entitled to statutory damages under the Connecticut False Claims Act, to be determined at trial, plus a civil penalty for each violation.

## FIFTH CAUSE OF ACTION
(Unjust Enrichment)

44. The United States and Connecticut reallege and reincorporate paragraphs 1 through 31 as if fully set forth herein.

45. This is a claim for the recovery of monies by which defendant has been unjustly enriched.

46. By directly or indirectly obtaining federal and state funds to which they were not entitled, defendant was unjustly enriched, and is liable to account and pay such amounts, or the proceeds therefrom, which are to be determined at trial, to the United States and Connecticut.

## SIXTH CAUSE OF ACTION
(Payment By Mistake)

47. The United States and Connecticut reallege and reincorporate paragraphs 1 through 31 as if fully set forth herein.

48. This is a claim for the recovery of monies paid by the United States and Connecticut to the defendant as a result of mistaken understandings of fact.

49. The improper claims which defendant submitted, or caused to be submitted, to the CMAP were paid based upon mistaken or erroneous understandings of material fact.

50. The DSS, acting in reasonable reliance on the accuracy, completeness and truthfulness of the information contained in the claims, paid defendant certain sums of money to which defendant was not entitled, and defendant is thus liable to account for and pay such amounts, which are to be determined at trial, to the United States and Connecticut.

## SEVENTH CAUSE OF ACTION
(Breach of Contract)

51. Connecticut realleges and reincorporates paragraphs 1 through 31 as if fully set forth herein.

52. At all times herein mentioned, defendant was party to a written contract with the DSS whereby defendant was approved and authorized to provide medical care and treatment to Medicaid beneficiaries in compliance with the Provider Agreement.

53. The DSS has complied with all obligations required of it under the terms and conditions of the Provider Agreement.

54. Between January 1, 2019, through April 24, 2021, defendant failed to comply with applicable statutes, regulations and guidelines that govern CMAP reimbursement, thereby breaching defendant's obligations under the Provider Agreement by submitting improper claims to the DSS for dental services.

55. The improper claims submitted by defendant and paid by the DSS as a direct and proximate result of defendant's breach of the Provider Agreement constitute the actual damages sustained by Connecticut, which are to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, the United States and Connecticut demand and pray that judgment be entered in its favor against defendant as follows:

On the First and Second Causes of Action under the federal False Claims Act, as amended, for the amount of statutory damages, and such civil penalties as are required by law, together with all such further relief as may be just and proper.

On the Third and Fourth Causes of Action under the Connecticut False Claims Act, as amended, for the amount of statutory damages, and such civil penalties as are required by law, together with all such further relief as may be just and proper.

On the Fifth, Sixth and Seventh Causes of Action, for unjust enrichment, payment by mistake, and/or breach of contract, for the damages sustained and/or amounts by which defendant was unjustly enriched or by which defendant retained illegally obtained monies, plus interest, costs, and expenses, and all such further relief as may be just and proper.

Respectfully submitted,

MARC H. SILVERMAN
ACTING UNITED STATES ATTORNEY

      /s/
MICHELLE L. MCCONAGHY
Assistant U.S. Attorney
Chief, Civil Division
Federal Bar No. ct27157
157 Church Street
New Haven, Connecticut 06510
(203) 821-3700 (phone)
(203) 773-5373 (fax)
Michelle.McConaghy@usdoj.gov

      /s/
ANNE F. THIDEMANN
Assistant United States Attorney
Federal Bar No. ct28028
1000 Lafayette Boulevard
Bridgeport, Connecticut 06604
(203) 696-3000 (phone)
(203) 579-5575 (fax)
Anne.Thidemann@usdoj.gov


WILLIAM TONG
CONNECTICUT ATTORNEY GENERAL

      /s/
GREGORY O'CONNELL (Federal Bar No. ct27473)
Deputy Associate Attorney General
Chief, Government Fraud Section
State of Connecticut
165 Capitol Avenue
Hartford, CT 06106
860-808-5040
Gregory.OConnell@ct.gov


      /s/
JOSHUA L. JACKSON (Federal Bar No. ct28008)
Assistant Attorney General
State of Connecticut
165 Capitol Avenue
Hartford, CT 06106
860-808-5040
Joshua.Jackson@ct.gov

CERTIFICATE OF SERVICE

I hereby certify that on May 5, 2025, a copy of the foregoing Complaint was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing, as indicated on this Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

In addition, I hereby certify that on May 5, 2025, a true and correct copy of the foregoing was served by electronic mail on:

JODY ERDFARB, ESQ.
Wiggin & Dana LLP
Two Stamford Plaza
281 Tresser Boulevard, 14th Floor
Stamford, CT 06901
(203) 363-7608 (phone)
jerdfarb@wiggin.com

                                                          /s/
                                          ANNE F. THIDEMANN
                                          Assistant United States Attorney